# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Pierre Thorsen, <br><br> Plaintiff, <br><br> v. <br><br> Community Unit School District 300 <br><br> Defendant. | Case No. 3:20-cv-50132 <br><br> Honorable Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pierre Thorsen was a high school history teacher employed by the Defendant, Community Unit School District 300 ("the District"), between August 1996 and August 2019. Thorsen contends that the District discriminated against him because of his Christian faith. The general issue is whether Thorsen's amended complaint pleads a claim under Title VII. The more precise issue is whether the amended complaint pleads an adverse employment action. There is no question that Thorsen's employment with the District was terminated. The question is whether the termination was voluntary. If the termination was involuntary, then an adverse employment action occurred. If the termination was voluntary, then Thorsen has no claim.

Thorsen sued under Title VII, claiming religious discrimination and for breach of contract. In response, the District filed a motion to dismiss. Because Thorsen has pleaded an adverse employment action, albeit barely, but has

1

abandoned his breach of contract claim, the motion [35] is denied in part and granted in part.

I.  **Legal Standard**

Before the landmark cases of *Twombly* and *Iqbal*, federal courts asked whether there was "no set of facts" under which the plaintiff would be entitled to relief from the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 669–70 (2009). But those cases represented a major shift. Now, to defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Unlike the "no set of facts" standard, the plausibility pleading standard—which allegedly is still notice pleading—means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Critically, federal courts accept as true all of the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

At multiple times, the District's briefing argues that this Court should weigh the complaint's inferences that are favorable to it against the complaint's inferences that favor Thorsen. *E.g.*, Dkt. 43, at 1 (referring to "[t]he more reasonable inference"). If that is what the District truly intends to argue, it is fundamentally wrong. *See Swanson v. Citibank N.A.*, 614 F.3d 400, 404 (7h Cir. 2010) (court does not stack inferences side-by-side only allowing a case to proceed if plaintiff's

inferences are more compelling). The Court accepts as true all of Thorsen's well-pleaded allegations and the reasonable inferences that arise from those allegations in Thorsen's favor. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016). Furthermore, the District seems to argue (several times) that Thorsen must prove facts. Indeed, the District mostly cites to cases decided on summary judgment, not on a motion to dismiss. But, at the motion to dismiss stage, Thorsen need only allege facts sufficient to raise the plausible inference that the District is liable, he does not have to prove anything yet. *Bucks v. Mr. Bults*, 218 F. Supp. 3d 776, 780 (S.D. Ill. 2016); *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 14 (D.D.C. 2009). Indeed, even claims that are improbable should not be dismissed at the pleading stage. *Twombly*, 550 U.S. at 556.

## II. Religious Discrimination

Thorsen sues the District for religious discrimination in violation of Title VII of the Civil Rights Act of 1964. He claims that the District discriminated against him by forcing him to resign after the District told him that some students were uncomfortable with his "talk of Christianity and religion" in the classroom. Dkt. 33, ¶ 14. Though Thorsen began teaching in the District in August 1996, he alleges that the discrimination began in April 2019. *Id.* ¶ 6. He also claimed that between April and the end of August of 2019, the working conditions were intolerable. Dkt. 33, at 4-5. The factual allegations supporting this assertion are sparse.

Thorsen's complaint paints a picture of a tenured history teacher with a history of high performance marks and positive student reviews. Still, he notes that

3

the District took issue with his use of the phrase "bless you my child." At some point after he allegedly made some students uncomfortable with his talk of Christianity, he participated in a "fact-finding meeting" in which he was informed of this. He alleges that the District informed him that "his firing/termination for alleged just cause was imminent." *Id.* ¶ 14. Then, through his union representative, the District informed him that he would need to resign before leaving the fact-finding meeting to avoid being fired. *Id.* Thorsen contends that this was material misrepresentation because no school board vote had happened yet.

Thorsen sees this as religious discrimination because he believes that similarly situated teachers were treated differently. Others taught the religion of the ancient Greeks. And he alleges that others advocated atheism or agnosticism and were not forced to resign.

Although this action presents circumstances in which a teacher allegedly displayed a religious affiliation in a public classroom, it does not allege a constitutional violation under 42 U.S.C. §1983. Thorsen seeks recovery under Title VII for employment discrimination based on his religion. Although the District seems to argue that the Court should hold Thorsen to a summary judgment standard in which he must show each element is met, alleging an employment discrimination claim at the pleading stage is much less rigid. In fact, it does not take much to plead an employment discrimination case. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019).

To defeat a motion to dismiss, Thorsen need only allege that the District instituted a specific adverse employment action against him on the basis of his religion. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'") (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson*, 758 F.3d at 827.

The District makes three arguments in support of its motion to dismiss. But all of these arguments are not appropriate at a motion to dismiss stage. The District could, and most likely will, make these arguments at the summary judgment stage, particularly the adverse employment action argument relating to the "involuntary resignation." Now is not the time, however.

### A. The District's Alleged Legitimate Nondiscriminatory Reason Is Not Relevant at the Pleading Stage

First, the District contends that "Plaintiff cannot establish liability if the District can articulate a legitimate, nondiscriminatory reason for the adverse employment action, which is not a pre-text for discrimination." Dkt. 36, at 4. To be sure, at summary judgment, a showing of a legitimate and nondiscriminatory reason for the action shifts the burden to the plaintiff to show that the reason given is nothing more than a pretext to discriminate. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (outlining the *McDonnell Douglas* framework). But again, the

5

District errs. This is not a motion for summary judgment. The requirements are significantly different on a motion to dismiss in which the purpose is to merely test the sufficiency of the complaint under *Twombly* and *Iqbal*. In *Swierkiewicz v. Sorema N.A.*, the Supreme Court explained an employment discrimination plaintiff need not allege facts comporting with the *McDonnell Douglas* burden-shifting framework:

> This Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constrict the role of the pleadings."

534 U.S. 506, 511 (2002). No doubt, *Swierkiewicz* was decided before the federal pleading world changed under *Twombly* and *Iqbal*, but it remains good law. Indeed, *Tombly* expressly affirmed its holding in *Swierkiewicz*. *Twombly*, 550 U.S. at 569–70.[1] Thus, the District's argument on this point fails.

B. Thorsen Need Not Prove His Case at the Pleading Stage

Second, the District also argues for dismissal on the belief that Thorsen "cannot *show* that he was meeting the District's legitimate performance expectations." Dkt. 36, at 5 (emphasis added). But again, he does not have to *show* anything. This is the pleading stage. As explained above, Thorsen need only *allege*

---

[1] Although the Supreme Court reaffirmed *Swierkiewicz* in *Twombly*, it should be noted that *Swierkiewicz* relied on *Conley v. Gibson*, 355 U.S. 41 (1957). *Swierkiewicz*, 534 U.S. at 513. And if *Iqbal* and *Twombly* sent *Conley* out to pasture, one can reasonably wonder how *Swierkiewicz* survived. For a graphical attempt to reconcile this conundrum, *see* Scott Dodson & Colin Stager, *Mapping Supreme Court Doctrine: Civil Pleading*, 7 Fed. Cts. L. Rev. 275 (2014).

6

that he suffered an adverse employment action because of his religion. *See Freeman*, 927 F. 3d at 965. But even if Thorsen needed to allege that he performed well, the District's argument fails for legal and logical reasons. Initially, the District calls his allegations self-serving. That a party's allegations in a pleading are self-serving is unsurprising and not legally infirm. *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) (everything a party asserts in litigation, including allegations in pleadings, is self-serving). And if self-serving statements in an affidavit or declaration can be sufficient to defeat a summary judgment motion, then self-serving allegations in a complaint can be sufficient to defeat a motion to dismiss. *See McKinney v. Office of the Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017).

Next, the District engages in circular reasoning reminiscent of "Brawndo's got electrolytes." Mark Castricone, *The Brawndo Fallacy or Circular Reasoning*, https://blog.apaonline.org/2019/08/29/the-brawndo-fallacy-or-circular-reasoning. The District argues that Thorsen was not performing well because he was subject to the allegedly discriminatory discipline. Dkt. 36, at 5. Effectively, the District argues that it cannot be liable for instituting an adverse employment action against Thorsen because the adverse employment action is evidence that he was not performing well. Moreover, even if Thorsen were required to plead satisfactory performance, the complaint does so. Thorsen alleges that he was a history teacher for many years with the District, that he was given awards, and that many students

7

offered high praise for his performance. (He even attaches that praise to his complaint.) If he needed to allege that he performed well, he did so.[2]

C. The Complaint Alleges an Adverse Employment Action

Third, the District argues that no adverse employment action occurred, entitling it to dismissal. Under the District's theory, Thorsen resigned, meaning he was not subject to an adverse employment action. And because an adverse employment action is a required element of an employment discrimination claim, *see Swearnigen-El v. Cook County Sheriff's Dep't.*, 602 F.3d 852, 859 (7th Cir. 2010), the District wins at the pleading stage. As Thorsen sees it, he was forced to resign, or coerced into resigning, by being faced with an ultimatum: resign or be immediately terminated. He further alleges that the District failed to inform him that the school board had not yet voted, which meant the District misrepresented by omission the imminence of his termination.

Without doubt, Thorsen's amended complaint is not a model of clarity in many ways. The amended complaint is jumbled and muddled. The amended complaint suffers from a recurring problem with many pleadings the Court sees; namely, it pleads much where it need not and little where more facts would help.

---

[2] The District also grumbles that these statements are "hearsay." But once again, the District misunderstands the standard at this stage of litigation. Thorsen is free to base his allegations on hearsay. *Lewis v. City of Chicago*, 235 F. Supp. 3d 1029, 1031 (N.D. Ill. 2016). The District's hearsay argument is even more perplexing when considered in conjunction with its self-serving argument. Under the District's theory, if plaintiffs allege they were performing satisfactorily, then courts cannot consider those allegations because they are self-serving. But if somebody else claims plaintiffs were performing satisfactorily, then courts cannot consider those statements either because they are hearsay. *See Davis v. Humphreys*, 747 F.3d 497, 498 (7th Cir. 2014) ("The federal judiciary should avoid using Catch-22.").

8

(Practice tip: Lots of irrelevant allegations do not overcome the paucity of pertinent allegations.) Moreover, although the amended complaint describes the alleged adverse employment action as "forced resignation and/or constructive termination", the theories and allegations supporting the assertion are murky. Dkt. 33, at 2. The Court interprets this murkiness to be evidence of a plaintiff not really knowing its theory of the case, who, instead, attempts to straddle as many theories of recovery as possible. (Second practice tip: Thinly alleging multiple claims makes a court think that none have much merit.)

Viewed in the light most favorable to Thorsen and drawing reasonable inferences in his favor, these are the allegations. Thorsen is Christian. Dkt. 33, at 2. During classes, Thorsen asked students about the historical origins of their last names, answered students' questions about secular objects in the classroom and how those objects related to historical events involving Christians in the Roman Empire and their willingness to die for their beliefs. Dkt. 33, at 3. Thorsen also used the phrase "bless you my child." Dkt. 33, at 4. According to Thorsen, the District "created a hostile environment, intolerable conditions, and undue restrictions against Christianity." Dkt. 33, at 4. This climate of a "hostile environment" with "intolerable conditions" existed for five months before his "forced resignation and/or constructive discharge." Dkt. 33, at 2.

According to Thorsen, during a fact-finding meeting, the District told him because of his actions and because "his talk of Christianity and religion made people uncomfortable . . . his firing/termination for alleged just cause was

9

imminent, (which would make it extremely difficult to find similar work)." Dkt. 33, at 4-5. The amended complaint goes on to allege that at this fact-finding meeting, the District representative materially misrepresented facts to Thorsen by telling Thorsen "that he would be terminated, although there had been no school board meeting." Dkt. 33, at 5. "The District then told [Thorsen], through his union representative, that unless he resigned that day, prior to leaving the purported 'fact finding' meeting at the district headquarters he would be fired for just cause (making finding similar work extremely difficult.)" Dkt. 33, at 5. Therefore, "[u]nder duress, Thorsen did and was forced to resign prior to leaving that meeting room, and was constructively terminated, which caused substantial loss of pay and future pension benefits." Dkt. 33, at 5.

For statutory employment discrimination cases, a material adverse action is a required element. *See Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016); *Porter v. City of Chicago*, 700 F.3d 944, 957 (7th Cir. 2012) (adverse employment action); *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 605 (7th Cir. 1999); *McKenzie v. Illinois Dep't of Trans.*, 92 F.3d 473, 485-86 (7th Cir. 1996) (adverse action not job related). A termination is a material adverse action. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003); *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007).

But what is a termination? *See generally Patterson v. Portch*, 853 F.2d 1399, 1405–06 (7th Cir. 1988) (discussing distinction between firing and resigning). The

easy answer lies at both ends of the spectrum. An employer firing an employee is a termination. *See, e.g.*, *Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006). And an employee simply resigning of his or her own free will is not a termination. *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). But a resignation that is involuntary is also a termination. *Spreen v. Brey*, 961 F.2d 109, 112 (7th Cir. 1992); *see also Fischer v. Avanade, Inc.*, 519 F.3d 393, 408–09 (7th Cir. 2008) ("Constructive discharge does constitute an adverse employment action. . ."). What qualifies as an "involuntary resignation" is less clear. *Palka*, 623 F.3d at 453. The determination is highly fact specific. *Bernstein v. Consolidated Foods Corp.*, 622 F. Supp. 1096, 1101–02 (N.D. Ill. 1984). In fact, these types of terminations are so fact specific that the Third Circuit has stated that they should not be decided on a Rule 12(b)(6) motion. *Hill v. Borough of Kutztown*, 455 F.3d 225, 232 n.7 (3d Cir. 2006). *But see Palka*, 623 F.3d at 453.

Although cases use various monikers and different categories, several types of involuntary resignations exist. In fact, "involuntary resignations" could just as easily be classified under a general rubric of "constructive discharge" as they are all closely related. *See Ulrey v. Reichhart*, 941 F.3d 255, 261 (7th Cir. 2019); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 502 (7th Cir. 2010). Additionally, the proofs for these types of claims sometimes overlap in confusing ways. The following is an admittedly non-exhaustive description of various types of involuntary resignations, which are relevant to the allegations in the amended complaint.

11

First, involuntary resignations can occur when employees resign in the face of a threat of termination plus some other factor. These claims will be referred to as "threat-plus claims." These types of claims do *not* require intolerable working conditions over a period of time. *Ulrey*, 941 F.3d at 261. For example, these threat-plus claims may exist when employees resign under threats of termination during which a misrepresentation was made. These will be creatively called "threat-plus misrepresentation claims." The decision in *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992) is a good example of that type of threat-plus claim. In *Spreen*, the plaintiff's supervisors held a meeting in which it was decided to offer her the option of resigning or being involuntarily terminated. *Id*. at 110. The next day, they met with the plaintiff and provided those two options, but in doing so, according to plaintiff, she was also told that if she were terminated she would also lose "all of her employment benefits." *Id*. at 111. This would include her retirement benefits, which was legally incorrect. *Id*. at 112. This was a "material misrepresentation." *Id*. Plaintiff signed a resignation letter at that meeting. *Id*. at 111. Relying on *Scharf v. Dep't of the Air Force*, 710 F.2d 1572 (Fed. Cir. 1983), according to the Seventh Circuit, a resignation is involuntary if an employer's material misrepresentation—regardless of whether they were innocent, intentional, or negligent—misled the employee into resigning. *Id*. at 112-13.

Moreover, a threat-plus claim may exist if in addition to the threat of termination, the employee was also threatened with an additional severe sanction (not just the loss of employment). These claims will be referred to as "threat-plus

severe sanctions claims." The decision in *Boyd v. Adams*, 513 F.2d 83, 86 (7th Cir. 1975) is a good example of that type of threat-plus claim. In *Boyd*, the plaintiff resigned to avoid immediate and present criminal penalties, which would essentially place her in jail pronto. *Boyd*, 513 F.2d at 86. Under the long-standing principle of "duress by imprisonment," the Seventh Circuit held that the resignation was involuntary because it was based on coercion. *Id*. Similarly, a resignation given in the threat of termination plus the loss of retirement benefits may be a proper "threat-plus severe sanctions claim." *See, e.g.*, *Downey v. S. Nat. Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981); *Bolling v. City of Montgomery*, 2020 U.S. Dist. LEXIS 58006, at *10 (M.D. Ala. Apr. 2, 2020).

The underlying rationale for these types of claims is that the resignation was not freely given. In threat-plus misrepresentation claims, the resignation is not voluntary because the employee was deprived of an informed choice. Spreen, 961 F.2d at 112 n.2. In threat-plus severe sanctions claims, the resignation was not voluntary because it was coerced by an additional motivating sanction other than just the loss of employment. *See Ulrey v. Reichhart*, 941 F.3d 255, 263 (7th Cir. 2019) (citing *Benuzzi v. Bd of Ed. of the City of Chicago*, 119 F. Supp. 3d 917, 927 (N.D. Ill. 2015) (threat of criminal prosecution)); *Lynd v. Bristol Kendall Fire Protection Dist.*, No. 11-cv-7014, 2012 U.S. Dist. LEXIS 104899 (N.D. Ill. Jul. 26, 2012) (threats of harm to family). The employee is faced with a Hobson's choice. *Palka*, 623 F.3d at 453. Traditionally, courts find that Hobson's choice decisions are not voluntary. *See, e.g.*, *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). As a

13

result, merely because employees are faced with the unpleasant choice of resignation or termination, without more, no threat-plus claim may exist. *See Ulrey*, 941 F.3d at 263; *Palka*, 623 F.3d at 453.

But different types of involuntary resignation claims may exist absent a threat of termination plus another factor. The first of these types of involuntary resignations occurs when employees are "not fired but quit," but do so because the working conditions have made continuing the employment simply intolerable. *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998); *compare Levenstein v. Salafsky*, 414 F.3d 767 (7th Cir. 2005) (no constructive discharge) *with Parrett v. City of Connersville, Indiana*, 737 F.2d 690 (7th Cir. 1984) (constructive discharge). The test for this type of claim is whether a reasonable employee would have concluded that the conditions made continued employment unbearable. *Id*. This means that the plaintiff was subjected to more than just a hostile work environment. *Chapin*, 621 F.3d at 679; *Fischer*, 519 F.3d at 409. These types of claims generally result "when an employee must endure intolerable working conditions over some period of time." *Ulrey*, 941 F.3d at 261. For purposes of this decision and order, these claims will be referred to as "can't-take-it-anymore claims".

The second type of non-threat-plus involuntary resignation occurs when the termination is essentially already made. *Kodish*, 604 F.3d at 502. Again, this type of involuntary resignation is sometimes labeled "constructive discharge." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). These types of

involuntary resignation claims will be referred to as "*fait accompli* claims". The Seventh Circuit has stated, "When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002). But this quote may be a bit oversimplistic and should be read in context. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004). At the time of the resignation, the termination must be essentially complete. *Fischer*, 519 F.3d at 409 (characterizing situation as the handwriting being on the wall or the axe about to fall); *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir. 1988) (termination must be imminent); *Kodish*, 604 F.3d at 502 (undisputed that if employee had not resigned he would have been terminated immediately). As a result, if additional steps must occur before a termination is complete, such as a due process hearing, then despite the unpleasant choice being made, an involuntary resignation has not occurred. *Cigan*, 388 F.3d at 333-34; *Alvarado*, 859 F.2d at 453 ("'Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguable limited to two unpleasant alternatives does not obviate the voluntariness of her resignation.'") (*quoting Christie v. United States*, 518 F.2d 584, 587-88 (Fed. Cir. 1975)); *see Ulrey*, 941 F.3d at 262 ("The test is not whether the employee who resigned was happy about resigning or even whether the employer asked for the resignation.").

Basically, if the termination is complete so that the termination cannot be contested, then the resignation is an involuntary resignation. But if the termination is not complete, so that the employee can contest the material adverse action before it becomes effective, then the resignation is voluntary. *Cigan*, 388 F.3d at 333-34; *see Alvarado*, 859 F.2d at 453 (employee can "stand pat and fight"). Quizzically—at least to this Court—*fait accompli* claims must still also show intolerable working conditions. *Chapin*, 621 F.3d at 679; *Cigan*, 388 F.3d at 333; *Univ. of Chi. Hosps.*, 276 F.3d at 332. That requirement seems a little odd because plaintiffs would just proceed under a can't-take-it-anymore claim if they could meet the intolerable working conditions requirement, not a *fiat accompli* claim. Why would plaintiffs burden themselves with having to prove additional elements? The Court freely admits that perhaps it is attempting to find a demarcation between these types of claims when none really exists.

In this case, Thorsen's amended complaint muddles through an attempt to plead (1) a threat-plus misrepresentation claim, (2) a can't-take-it-anymore claim, and (3) a *fait accompli* claim.[3] When a plaintiff has difficulty framing a claim, that is likely a bad sign as to the merits of the action, but it is not *necessarily* fatal at the pleading stage. *See, e.g.*, *Puncochar v. Revenue Mgmt. of Ill. Corp.*, No. 15-cv-07089, 2017 U.S. Dist. LEXIS 49939, at *14 (N.D. Ill. Mar. 31, 2017). The threat-plus misrepresentation claim is evidenced by the allegations his termination was

---

[3] Of course, it should be remembered that a complaint need not identify a theory and can even identify an incorrect theory and survive a motion to dismiss. *Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012); *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).

16

imminent and that if he did not resign, he would be fired, but he was not told that the school board had not met yet. Dkt. 33, at 4-5. (The Court assumes generously that Thorsen is alleging a misrepresentation by omission. *Restatement (Third) of Torts: Liability for Economic Harm* §13(c) (Am. Law Inst. 2020).)[4] The *fait accompli* claim is that he was at a fact-finding conference, not told that the school board had not met, and was told that his termination was imminent. Dkt. 33, at 4-5. The can't-take-it-anymore claim is supported—albeit very minimally—by the allegations that the intolerable working conditions based on his Christianity occurred over the course of months. Dkt. 33, at 2, 4. Granted, the allegations are sparse. But Thorsen is not required to hang factual allegations on each element of his claim. *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Instead, Thorsen must provide notice of the claims, allowing the District to answer those claims. *George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) ("Plaintiffs need not plead facts but they must give enough detail to illuminate the nature of the claim and allow defendants to respond.") (cleaned up); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 819-20 (7th Cir. 2001) (function of complaint is to put defendants on notice of claim). And, again, the Court's suspicions of the merits of the claims does not result in dismissal. *Twombly*, 550 U.S. at 556.

The District asserts that *Ulrey v. Reichhart*, 941 F.3d 255 (7th Cir. 2019) supports its motion. But that case is critically different, both procedurally and

---

[4] The Court leaves it up to the parties to develop how a long-term teacher could reasonably believe that the school board met and voted in favor of his termination without him being aware of it. A reasonable person might be highly suspicious of that assertion.

17

factually. First, *Ulrey* was decided on a summary judgment motion. The factual record was developed and presented to the court. Second, "Ulrey offered to resign because Reichhart's 'vibes' and 'physical demeanor' communicated his desire to fire her. That simply [was] not enough to treat defendants as if they had denied plaintiff the extensive procedural protections available to her if she had wanted to contest a possible termination." 941 F.3d at 263. Those facts, established through discovery, are very different than Thorsen's allegations that he was told his termination was imminent and he was led to believe by omission that the processes available to him through a school board meeting were unavailable.

Thorsen has met the minimal pleading requirements for a statutory employment discrimination claim. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) ("Rule 8(a)(2)'s 'short and plain statement of the claim' must contain a minimal level of factual detail, although that level is indeed very minimal."). Therefore, the motion to dismiss this claim is denied.

### III. Breach of Contract

The amended complaint also contains a breach of contract claim. Dkt. 33, at 6-8. The District moved to dismiss the claim. But Thorsen never responded to any of the arguments moving for dismissal. So, Thorsen has abandoned this claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Foy v. Resolute Acquisition Corp.*, No. 18-cv-2936, 2019 U.S. Dist. LEXIS 138864, at *8 (S.D. Ind. Aug. 16, 2019); *Eglen v. Am. Online, Inc.*, 2001 U.S. Dist. LEXIS 26002, at *9 (S.D. Ind. Jun. 19, 2001). The dismissal is with prejudice because a party cannot file an

amended complaint to replead claims that were previously abandoned. *See Motta & Motta LLC, et al., v. Lawyers 777, LLC*, No. 18-cv-5811, 2020 U.S. Dist. LEXIS 142640, at \*16-19 (N.D. Ill. Aug. 7, 2020); *Bucciarelli v. Gordon R. Corp.*, No. 80 C 4119, 1985 U.S. Dist. LEXIS 20763, at \*6 (N.D. Ill. Apr. 12, 1985); *Conroy Datsun, Ltd. v. Nissan Motor Corp.*, 506 F. Supp. 1051, 1054 (N.D. Ill. 1980).

## IV. Conclusion

For the reasons explained above, the District's motion to dismiss [35] is denied in part and granted in part. The case is referred to Magistrate Judge Schneider. The parties should address with Judge Schneider whether a settlement conference would be fruitful.

Date: May 5, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division