**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

Pierre G. Thorsen,

      Plaintiff,

v.

Community Unit School District 300, and
Local Education Association District 300,

      Defendants.

Case No. 3:20-cv-50132

Judge Iain D. Johnston
Magistrate Judge Margaret Schneider

**THIRD AMENDED COMPLAINT**

Now comes Plaintiff, PIERRE G. THORSEN, by his attorneys, Hanson Law Group, LLP, and for his Third Amended Complaint against Defendants, COMMUNITY UNIT SCHOOL DISTRICT 300 and LOCAL EDUCATION ASSOCIATION DISTRICT 300, states as follows:

**COUNT I AGAINST CUSD 300**
**EMPLOYMENT DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**PARTIES**

1.      This is an action for employment discrimination, brought by the plaintiff, Pierre G. Thorsen, a resident of the County of Kane in the State of Illinois. This Third Amended Complaint follows the filing of an original Complaint and an Amended Complaint.

2.      The defendant is Community Unit School District 300, (CUSD 300), with an administrative headquarters of 2550 Harnish Drive, Algonquin, Illinois 60102, in McHenry County.

**JURISDICTIONAL GROUNDS**

3.      Thorsen was employed by CUSD 300, with McHenry County headquarters. CUSD 300 includes students residing in Kane, Cook, DeKalb, and McHenry counties. He taught at Jacobs

*EXHIBIT A*

High School, 2601 Bunker Hill Road, Algonquin, Illinois 60102 in McHenry County, and at Hampshire High School, 1600 Big Timber Road, Hampshire, Illinois 60140, in Kane County.

4. Starting on August 26, 1996, the plaintiff was employed continuously by the defendant, until a forced resignation and/or constructive termination occurred at the McHenry County District 300 headquarters on August 23, 2019.

5. The forced resignation and/or constructive termination was effective September 3, 2019.

6. The defendant discriminated against the plaintiff, beginning on or about, April 2017.

7. The defendant is not a federal government agency, and the plaintiff has filed charges against the defendant asserting the acts of discrimination indicated in this complaint with the United States Equal Employment Opportunity Commission, on or about, January 14, 2020. A copy of the charge is attached to the original complaint as Exhibit A [DKT #1-1], and incorporated by reference herein as **Exhibit A**. It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

8. The United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, mailed January 15, 2020, which was received by the plaintiff in the regular U. S. mail no sooner than January 17, 2020, a copy of which is attached to the amended complaint as Exhibit B [DKT #33-1] and incorporated by reference herein as **Exhibit B**. The original Complaint was filed within 90 days of that receipt.

9. The defendant discriminated against the plaintiff because of the plaintiff's religion.

2

10.     Jurisdiction over the statutory violation alleged is conferred for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3).

**STATEMENT OF THE CLAIM SHOWING ENTITLEMENT TO RELIEF**

11.     Plaintiff observes and practices the religion of Christianity, and, thus, is a member of a protected class.

12.     The defendant retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10.

13.     Plaintiff performed reasonably on the job in accord with his employer's legitimate expectations, since 1996, by the following:

a.      In a legitimate pedagogical way, asked students the historical origins of their last names, with no reference to culture, religion, or race, complying with 105 ILCS 5/27-21, which provides in relevant part, that when teaching U.S. History, the teaching,

> *… shall include a study of the role and contributions of African Americans and other ethnic groups including but not restricted to Polish, Lithuanian, German, Hungarian, Irish, Bohemian, Russian, Albanian, Italian, Czech, Slovak, French, Scots, Hispanics, Asian Americans, etc., in the history of this country and this State ….*

b.      In a legitimate, pedagogical way, answered questions from students concerning secular objects in the classroom and how they relate to historical events involving Christians in the Roman Empire, and being willing to die for beliefs, complying with 105 ILCS 5/27-12, which requires that every public school teacher shall teach character education, to raise pupils' "moral courage," and 105 ILCS 5/27-20.3, which requires curriculum to include lessons of the Holocaust and "other acts of genocide across the globe."

3

c.      In a legitimate, pedagogical way, asked an entire Academic Support Period classroom icebreaker, introductory questions about historical origins of last names, to improve the learning environment, complying with 105 ILCS 5/27-21, which provides in relevant part, that when teaching U.S. History, the teaching,

> … *shall include a study of the role and contributions of African Americans and other ethnic groups including but not restricted to Polish, Lithuanian, German, Hungarian, Irish, Bohemian, Russian, Albanian, Italian, Czech, Slovak, French, Scots, Hispanics, Asian Americans, etc., in the history of this country and this State* ….

d.      In a legitimate, and pedagogical way, during an Academic Support Period, answered student questions to provide academic support, using a part of District curriculum, as a teacher the District made available to students to provide extra academic support (See Exhibit C, and Exhibit D2 attached to the amended complaint [DKT #33-1], and incorporated by reference herein as **Exhibit C**, and **Exhibit D2**).

e.      Received the honor, in 2015, of being nominated for "Kane County Educator of the Year," by the District.

f.      Received support from the District's residents for his teaching. (See Group Exhibit E attached to the amended complaint [DKT #33-1], and incorporated by reference herein as **Group Exhibit E**.)

g.      Prior to 2017, received numerous high ratings and commendations for teaching performance by the District, and even since 2017, never received a formal review of less than proficient.

14.     Despite his reasonable performance, he was subjected to adverse employment action as follows:

a.      Defendant unduly restricted use of the term, *inter alia*, "bless you, my child."

b.      Defendant otherwise created a hostile environment, intolerable conditions, and undue restrictions against Christianity. (See April, 16 2019, Notice to Remedy, attached hereto, and incorporated by reference herein as **Exhibit F**.)

c.      Following the actions described in paragraphs 13 a-d, in August 2019, defendant told plaintiff, during what was represented to him as a fact-finding meeting, that because his talk of Christianity and religion made people uncomfortable, and for his actions described in paragraphs 13 a-d, his firing/termination for alleged just cause was imminent, (which would make it extremely difficult to find similar work).

d.      Essentially, the District representatives present at the purported factfinding meeting materially misrepresented facts to plaintiff, telling him that he would be terminated, although there had been no school board meeting.

e.      The District then told Plaintiff, through his union representatives, that unless he resigned that day, prior to leaving the purported "fact finding" meeting at the district headquarters he would be fired for just cause (making finding similar works extremely difficult).

15.     Under duress, Thorsen did and was forced to resign prior to leaving that meeting room, and was constructively terminated, which caused substantial loss of pay and future pension benefits.

5

16.     Similarly situated employees outside of his protected class were treated more favorably, as shown below.

a.     Religion of the ancient Greeks was taught as a part of the District curriculum, with no adverse action against the teacher.

b.     Atheism and agnosticism were advocated, without adverse action against the teacher.

c.     Activities involving getting to know your name were taught, including historical background, without adverse action against the teacher.

17.     The plaintiff demands that the case be tried by a jury.

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff:

a.     Direct the defendant to re-employ the plaintiff.

b.     Direct the defendant to reasonably accommodate the plaintiff's religion and cease intolerable and hostile conditions.

c.     Direct the defendant to pay lost wages and compensatory damages, in an amount in excess of $75,000.00.

d.     Grant the plaintiff appropriate injunctive relief, lost wages, compensatory damages, post- judgment interest, and costs, including reasonable attorney fees and expert witness fees.

e.     Grant such other relief as the Court may find appropriate.

## COUNT II AGAINST CUSD 300
## INDUCEMENT OF BREACH OF FIDUCIARY DUTY

### PARTIES AND JURISDICTIONAL GROUNDS

18-34. Plaintiff incorporates herein by reference, the allegations in paragraphs 1-17, as paragraphs 18-34 herein.

35.     Local Education Association District 300 (LEAD 300) was the union representing Pierre Thorsen during his time as a teacher at CUSD 300. LEAD 300 has an address of 2250 Point Boulevard, Elgin, Illinois, 60123.

## STATEMENT OF THE CLAIM SHOWING ENTITLEMENT TO RELIEF

36.     LEAD 300 had a fiduciary duty to act in the best interest of Pierre Thorsen, who was a dues-paying member of LEAD 300. CUSD 300 colluded with LEAD 300 to breach its fiduciary duty to Pierre Thorsen, and induced or participated in such breaches, as follows:

a.      After LEAD 300 provided attorney representation as a union benefit to Pierre Thorsen at a disciplinary meeting in April 2019, from which the above April, 2019, Notice to Remedy was issued (but Pierre Thorsen kept his job), CUSD 300 through its in-house attorney, met with Pierre Thorsen, LEAD 300 representatives, and CUSD 300 representatives, to coerce and force Pierre Thorsen to resign;

b.       In August 2019, CUSD 300 allowed its in-house attorney to discuss the alleged violation of the Notice to Remedy, without Pierre Thorsen having an attorney present at the discussion to act in the best interest of Pierre Thorsen; having an attorney present would have prevented the coerced and forced resignation; and

c.      In addition, CUSD 300 showed its tendency to plot with LEAD 300 as early as February 19, 2019, to the detriment of Pierre Thorsen by:

i.     Ambushing Pierre Thorsen at a fact-finding meeting with new allegations, so that Pierre Thorsen could not have time to present a defense; and

ii.    Advising LEAD 300 (but not Pierre Thorsen) of the ambush. Pierre Thorsen did not receive notice and thus was ambushed. CUSD 300 presented new but false allegations to Pierre Thorsen with no prior warning from CUSD 300 nor LEAD 300. (See Exhibit G, attached hereto and incorporated herein.)

37.     CUSD 300 obtained the benefit of this breach of fiduciary duty by LEAD 300, as CUSD 300 obtained the forced resignation of Pierre Thorsen, which was the objective of CUSD 300.

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff:

a.      Direct the defendant to re-employ the plaintiff.

b.      Direct the defendant to reasonably accommodate the plaintiff's religion and cease intolerable and hostile conditions.

c.      Direct the defendant to pay lost wages and compensatory damages, in an amount in excess of $75,000.00.

d.      Grant the plaintiff appropriate injunctive relief, lost wages, compensatory damages, post- judgment interest, and costs, including reasonable attorney fees and expert witness fees.

e.      Grant such other relief as the Court may find appropriate.

## COUNT III AGAINST CUSD 300
## CIVIL CONSPIRACY

38-74.  Pierre Thorsen adopts hereto and incorporates herein paragraphs 1-37 as paragraphs 38-74 herein.

75.     As early as February 15, 2019, CUSD 300 plotted with LEAD 300, to harm Pierre Thorsen.

76.     CUSD 300 plotted with LEAD 300 to harm Pierre Thorsen by:

a.      Ambushing Pierre Thorsen at a fact-finding meeting with new allegations, so that Pierre Thorsen could not have time to present a defense;

b.      Advising LEAD 300 (but not Pierre Thorsen) of the ambush to avoid violating due process provisions of the Union-CUSD 300 contract, and in fact did present these new, but

false allegations to Pierre Thorsen with no prior warning from CUSD 300 nor LEAD 300.

(See **Exhibit G**, attached hereto and incorporated herein.)

77.     Continuing on with this plot, as set forth above in paragraph 36, a-b, CUSD 300 acted in an unlawful manner.

78.     As a direct and proximate result of this civil conspiracy, Pierre Thorsen submitted an immediate and a forced resignation, causing a substantial loss of income and benefits.

**DEMAND FOR RELIEF**

WHEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff:

a.     Direct the defendant to pay lost wages and compensatory damages, in an amount in excess of $75,000.00.

b.     Grant the plaintiff appropriate injunctive relief, lost wages, compensatory damages, post- judgment interest, and costs, including reasonable attorney fees and expert witness fees.

c.     Grant such other relief as the Court may find appropriate.

**COUNT IV AGAINST LEAD 300**
**BREACH OF FIDUCIARY DUTY**

79.     Pierre Thorsen adopts and incorporates herein paragraphs 1-78 as paragraphs 79-157 herein.

**STATEMENT OF THE CLAIM SHOWING ENTITLEMENT TO RELIEF**

80.     In 2019 and for over ten years prior thereto, LEAD 300 was a teacher's union in which Pierre Thorsen was a dues paying member.

81.     At all times described herein, LEAD 300 had a fiduciary duty to act in the best interest of Pierre Thorsen.

82.     As a part of that fiduciary duty, LEAD 300, as a union benefit, provided Pierre Thorsen with attorney representation at a disciplinary meeting in April 2019.

9

83. The in-house attorney for CUSD 300 was present at that meeting.

84. Although a Notice to Remedy was served as a result of that meeting, Pierre Thorsen kept his job.

85. In August 2019, LEAD 300 was advised of a "fact-finding" meeting to be conducted by CUSD 300, concerning an alleged violation of the Notice to Remedy, but failed to provide attorney consultation in preparation for that meeting or attorney protection at that meeting.

86. As a direct and proximate result of that failure to have an attorney present to protect Pierre Thorsen, Thorsen communicated with the in-house CUSD 300 attorney and was persuaded to submit an immediate and forced resignation.

87. This forced resignation has and will cost Pierre Thorsen significant monetary damages.

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff:

a. Direct the defendant to pay lost wages and compensatory damages, in an amount in excess of $75,000.00.

b. Grant the plaintiff appropriate injunctive relief, lost wages, compensatory damages, post- judgment interest, and costs, including reasonable attorney fees and expert witness fees.

c. Grant such other relief as the Court may find appropriate.

## COUNT V LEAD 300
## CIVIL CONSPIRACY AGAINST

88-175. Pierre Thorsen adopts and incorporates herein paragraphs 1-87 as paragraphs 88-175 herein.

176. As set forth in paragraphs 75-77 above, LEAD 300 was predisposed to colluding with CUSD 300, and acting against the best interest of Pierre Thorsen.

177.    Additionally, LEAD 300 destroyed evidence of the pretextual grading issue being presented by CUSD 300. (See **Exhibit H**, attached hereto and incorporated herein.)

178.    As set forth in paragraphs 80-87 above, LEAD 300, by failing to call an attorney to be present to protect Pierre Thorsen, caused Pierre Thorsen to submit to an immediate and forced resignation.

179.    As a direct and proximate result of the above failure, Pierre Thorsen has sustained substantial monetary losses.

**DEMAND FOR RELIEF**

WHEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff:

a.    Direct the defendant to pay lost wages and compensatory damages, in an amount in excess of $75,000.00.

b.    Grant the plaintiff appropriate injunctive relief, lost wages, compensatory damages, post- judgment interest, and costs, including reasonable attorney fees and expert witness fees.

c.    Grant such other relief as the Court may find appropriate.

Dated this day: November 10, 2022                    Respectfully Submitted,

                                                     /s/ Timothy J. Lowery
                                                     Timothy J. Lowery
                                                     *Attorney for Plaintiff*

Hanson Law Group, LLP
1000 Hart Road, Suite 300
Barrington, IL 60010
Main: (847) 277 – 9988
Fax: (847) 277 – 7339
timlowery@hansonlawgrp.com;
keithhanson@hansonlawgrp.com
nancymondragon@hansonlawgrp.com;
kaitlynlancaster@hansonlawgrp.com

Colleen F. O'Keefe
Chief Legal Counsel
colleen.okeefe@d300.org
www.d300.org
2550 Harnish Drive
Algonquin, IL 60102
847.551.8372 phone
847.551-8493 fax



**Community Unit School District**

April 16, 2019

Mr. Pierre Thorsen
1219 Indiana Avenue
St. Charles, IL. 60174

## Re: Notice of Unpaid Suspension and Notice to Remedy

Dear Mr. Thorsen:

On February 12, 2019, you were informed that the parents of a Jacobs High School student filed a complaint regarding your interactions with their daughter. Specifically, the parents alleged that you had conversations with their student that promoted one religion over another in an attempt to convert the student to Christianity. Additionally, the parents alleged that you provided the student with a Bible and gave her the names and contact information of several adults not affiliated with the school without their knowledge or consent. On February 12, 2019 you were further informed that an investigation would be forthcoming and you were directed to not have any contact or interaction with the student until further notice.

The District's Chief Legal Counsel, Chief Academic Officer and Jacobs High School Principal investigated the alleged incidents. During the course of our investigation, the administrative team reviewed electronic communication and met with students, parents and staff. The investigation also included a meeting with you on April 3, 2019 at which you were represented by Mike Williamson, LEAD President. Based on this investigation, it has been concluded that you:

- Initiated a student Bible Study or Apologetics Class without the knowledge or approval of building or District administration. This group met on school grounds, in your classroom on a weekly basis. This group focused on defending the Christian faith. You fully participated in this group, often leading the conversations, and provided the students in attendance with religious resources. Your actions constitute a violation of School Board Policy 7:330, which requires that in the event school employees are present at religious student-initiated meetings, they cannot participate in any way. Your actions also constitute a violation of Administrative Procedure 6:190-AP2, which establishes the procedure that must be followed prior to forming a new student activity or club. Finally, it is not appropriate to discuss religious topics or advocate religious viewpoints that depart from the adopted curriculum.

- Provided a Christian Learning/Student Bible to the student at issue. The Bible was not provided as part of an approved curriculum. Additionally, the Bible was not an approved textbook or instructional material pursuant to School Board Policy 6:210. The sole purpose of providing the Bible was to assist the student in her advancement of knowledge of and/or belief in the Christian faith. This action was a violation of School Board Policy 6:70 which states that the study of religions shall not give preferential treatment to any single religion, religious belief, or to religion

**SD0127**
**EXHIBIT F**

in general. Policy 6:70 further states that the study of religions shall be treated as an academic subject with no emphasis on the advancement or practice of religion.

- Repeatedly engaged in conversations about religion with students before, during, and after school, while in the school building and in your role as a teacher. The conversations were not related to an approved curriculum. The conversations focused predominately on the Christian faith, historical evidence of Christianity, and how to defend the faith. Through these conversations, you clearly indicated to students your personal religious beliefs. These conversations are not appropriate in that they advocate religious viewpoints that depart from the adopted curriculum.

- Engaged in conversations with a student regarding the student's religious conversion. These conversations influenced the student's decision to convert. Throughout the student's conversion process, you commented that you "were happy about her interest in Christianity", "you supported her decision to convert", "you were proud of her", "God chose her to go through the conversion journey", and "God saw worth in her". Such conversations and comments are inappropriate in your role as a classroom teacher.

- Discussed a student's personal matters with other students. Specifically, you discussed a student's religious beliefs, religious background, family matters and personal struggles with other students. You stated you did this so that the other students "would pray" for the student at issue. These discussions and disclosures are unprofessional and inappropriate.

- Provided a student with the names and contact information of several adults that have no affiliation to the school or the District. You stated that you provided this information to the student in order to provide her with a support network and to prepare for the possibility that the student may be disowned by her parents after the student converted to Christianity. At no point did you notify the student's parents or building administration that the names and contract information of unknown adults were shared with the minor aged student. At no point did you notify the parents, trained social emotional building staff, or building administration of your concerns regarding the need for a support network or possible disownment. Your actions were inappropriate and jeopardized the safety and welfare of a student.

The District takes this matter and your actions to be extremely serious in nature. The sense of trust between our staff members and the developing young people we serve is both fragile and of the highest importance. It is your job as a teacher to provide for the health, safety and welfare of your students. It is also your responsibility to refrain from promoting or favoring any specific religion in your role as a teacher. Your conduct exhibited an unacceptable lack of understanding as to the appropriate parameters of the teacher/student relationship. Your actions and words were inappropriate, unprofessional, and exhibited poor decision-making. Additionally, several of your actions and comments violated School Board policies and procedures, and federal law. Your conduct will not be tolerated by District 300.

**SD0128**

I believe your conduct requires immediate remediation. Accordingly, I am recommending that the Board of Education suspend you without pay for seven (7) days. The days of suspension will be April 24, 25, 26 and May 15, 16, 17 and 20, 2019. I am also recommending that the Board of Education adopt a Notice to Remedy. The Notice to Remedy references directives, which are as follows:

1. Do not have contact with the student at issue in this complaint for the remainder of her educational career within the District.

2. Do not provide a student's name or contact information to individuals outside of the school building.

3. Do not provide a student's name or contact information to individuals within the school building unless they have an educational interest in the information.

4. Do not provide students with the names and contact information of adults outside of the school building without first discussing it with the students' parents.

5. Do not discuss students' records or personal matters with anyone who does not have an educational need in possessing the information.

6. In the event you have a concern about a student's health, safety, or welfare, immediately notify a building administrator and trained building staff member for assistance (social worker, psychologist, counselor, etc.).

7. In the event you suspect abuse or neglect of a student, immediately call DCFS to fulfill your obligations as a mandated reporter.

8. Do not discuss religion with students unless it is in the context of an academic subject that the prescribed curriculum dictates. More specifically, do not give preferential treatment to any single religion or religious belief. This includes discussing your faith and/or the faith of others before, during or after school. This also includes answering questions about your faith and Christianity before, during or after the school day.

9. Do not make comments that are religious in nature. Examples include, but are not limited to, "pray for her/him", "bless you my child", "it's God's will", etc.

10. Do not give students religious materials that are not related to a specific curriculum.

11. Do not participate in a student-initiated religious club or meeting.

12. Do not apply to sponsor a religious based student club.

13. Immediately terminate the Bible Study/Apologetics Meeting that occurs in your classroom on Thursday mornings, as this is not an approved school sponsored or student-initiated activity. In the event the students want to continue to meet, they can speak with the building principal to secure a time and location in the building to hold similar student-initiated meetings.

14. Refrain from referencing a student's cultural, religious or racial background or discussing the same any time during the performance of your duties. This includes instructional time and all interactions with colleagues and students in your professional capacity as a teacher. The only exception to this directive would be if the information is relevant to the health, safety, or welfare concern.

15. Refrain from making comments or discussing topics that would imply an inappropriate level of familiarity with a student.

SD0129

16. Adhere to all Board of Education policies and administrative procedures.

17. Comply with all directives given to you whether orally or in writing, by your supervisors, the District's administration, or the Board of Education.

18. Report to your supervisor any incidents that may violate any of the foregoing directives immediately.

You must comply with these directives immediately and remain in compliance for the balance of your employment with the School District. In an attempt to help you comply with these directives, you will be assigned to a different high school at the start of the 2019-2020 school year. In addition, you will be released from your extra duty assignments at the end of the 2018-2019 school year. Administration may periodically visit your classroom to ensure your compliance with these directives. Failure to comply with these directives will result in further disciplinary action, up to and including your dismissal as a tenured employee in this School District.

Attached is a copy of the Draft resolution and Notice to Remedy that I will present to the Board of Education. The recommendation for discipline will be made to the Board of Education at the April 23, 2019 meeting. The Board will review and discuss the recommendation in closed session, which will be held at 6:00 p.m. You may attend this portion of the meeting in order to respond to my recommendation, accompanied by a representative of your choice. Please be advised that the Board of Education has the right to issue more severe disciplinary action if deemed warranted.

Sincerely,

Colleen F. O'Keefe
Chief Legal Counsel, CUSD300

The signature of the employee below does not indicate agreement. The employee's signature simply verifies receipt of the document and that the document has been reviewed with the employee.

Pierre Thorsen, Teacher

4/16/2019

Date

**SD0130**

| From: | Rasar, Mark |
|---|---|
| To: | Joseph Schumacher |
| Cc: | Barbara Valle; Aubrey Allen; Kara McMahon |
| Subject: | Re: PT summary |
| Date: | Friday, February 15, 2019 12:33:10 PM |

Thank you for the summary. I will keep you posted on the progress.

On Fri, Feb 15, 2019 at 11:08 AM Joseph Schumacher <joseph.schumacher@d300.org> wrote:

I am following up with a summary of our follow up conversation today to ensure we are all on the same page. Here is the plan:

• Mark has issued the fact finding notice for the gradebook issue. Mark and Aubrey will conduct this meeting on Tuesday.

• When asked directly by Kara, Aubrey says she does not want to file a formal complaint at this time but would like Barb and Mark to address the issue with PT and LEAD.

• Mark and/or Barb will speak to Tom and Bob ahead of the FF meeting about the communications/interaction concerns that resulted from Aubrey's google doc log. Tom and Bob will be given the heads up of the concerns and that a non-disciplinary meeting is needed with PT and his LEAD rep after the FF meeting is closed.

• Mark and Barb will meet with Pierre and his LEAD rep(s) after the FF meeting is closed and Aubrey has left the room

• Mark and Barb will follow up with an email summary of expectations to Pierre immediately after the meeting

> o In the meeting, Mark and Barb will put PT on notice that the inappropriate and personal comments must cease

> o PT will also be directed not to approach Aubrey in any way regarding this matter but will only engage in professional conversations and interactions with her

> o If any concerns about Aubrey are brought up in the meeting as deflection method, Mark will write down the concerns and simply state they will be reviewed and addressed appropriately, but that the reason for the meeting stands

**EXHIBIT G**

| | |
|---|---|
| **From:** | Tim Lowery |
| **To:** | Nancy Mondragon |
| **Subject:** | Fw: Union meeting |
| **Date:** | Thursday, November 10, 2022 1:04:41 PM |
| **Attachments:** | Outlook-oi114jyn.png |



Timothy J. Lowery
Of Counsel
1000 Hart Road, Suite 300
Barrington, IL 60010
847.277.9988 - Main
847.277.7339 - Fax
timlowery@hansonlawgrp.com

**From:** Pierre Thorsen <pierrethorsen@hotmail.com>
**Sent:** Thursday, November 10, 2022 12:52 PM
**To:** Tim Lowery <timlowery@hansonlawgrp.com>
**Subject:** Fw: Union meeting

**From:** thomas domenz <tkdomenz@att.net>
**Sent:** Sunday, March 3, 2019 10:48 AM
**To:** Pierre Thorsen <pierrethorsen@hotmail.com>
**Subject:** Re: Union meeting

Sorry Pierre, but since LEAD didn't feel it was truly relevant to the situation I destroyed it. You don't need to feel like you are bothering me. This is part of the job I signed up for and its what the union does for the membership.

And thank you for the prayers and thoughts.

Thanks again,
TD

Sent from my iPhone

On Mar 2, 2019, at 5:27 PM, Pierre Thorsen <pierrethorsen@hotmail.com> wrote:

I am sorry to bother you in light of what you are going through. Do you still have the grade print out I gave you showing one of Aubrey's students? I would like to make a copy of it. My prayers are still with you, your sister and your families.

**EXHIBIT H**

### RE: Yesterday's Meeting.

Wilquet, Steve <Steve.Wilquet@ieanea.org>
Mon 3/4/2019 3:45 PM

To: Pierre Thorsen <pierrethorsen@hotmail.com>

I forwarded your message to his personal email.

**Steve Wilquet**
**UniServ Director**
Illinois Education Association-NEA
2250 Point Blvd. Suite 400
Elgin, IL 60123-9204
P: 847.428.7640
F: 847-428-9607
TF: 800.554.1806





---

**From:** Pierre Thorsen [mailto:pierrethorsen@hotmail.com]
**Sent:** Saturday, March 2, 2019 11:03 AM
**To:** Wilquet, Steve <Steve.Wilquet@ieanea.org>
**Subject:** Re: Yesterday's Meeting.

Sorry to bother you again but could you share with me Tom Domenz's personal email address? I think I found a smoking gun to prove Aubrey Allen is lying about the grade situation about which I am being disciplined and I wish to not communicate with Tom via the school email. I misunderstood exactly what Mr. Rasar meant in several of his questions during the fact finding meeting. As a result, the letter of discipline is erroneous on multiple accounts and Aubrey is feeding the administration misleading information about me and the curriculum regarding the grade situation. Also, did you notice in my last email I sent you the highlighted section of Mr. Rasar's email? It appears to me he expanded the gag order to include all school employees except those at the meeting. Is that an accurate understanding? Thank you so much for your assistance.


Pierre

---

**From:** Wilquet, Steve <Steve.Wilquet@ieanea.org>
**Sent:** Thursday, February 21, 2019 3:13 PM
**To:** Pierre Thorsen
**Cc:** Mike Williamson
**Subject:** RE: Yesterday's Meeting.


I don't think that's an accurate characterization of what they've said to you. They've directed you to not discuss the previous issue with her. It's my understanding that she considers the issue closed and wants to move on. They have in no way asked you not to speak to anyone, just to avoid that topic at that persons request.

| | |
|---|---|
| **From:** | Rasar, Mark |
| **To:** | Allen, Aubrey |
| **Subject:** | Re: Situation |
| **Date:** | Wednesday, February 13, 2019 10:27:50 AM |

Come down and see me.

On Wed, Feb 13, 2019 at 9:22 AM Allen, Aubrey <aubrey.allen@d300.org> wrote:
Hi Mark and Joe,

Progress report grades were due yesterday at 1 pm. Mr. Thorsen did not have his grades
turned in on time. I went and spoke with Mr. Thorsen about needing to turn his grades in. He
let me know that he forgot to turn them in. As we were talking Mr. Thorsen informed me
that his World History students did not have any grades. I said I understood that we had not
given the summative yet, but that the grade could be based on what they had done thus far,
even if it normally would not count towards their grade (practice work, formative work,
etc...). He said okay thank you. I checked a little later and saw that he only had one of his
classes posted, and sent him an email letting him know grades had to be in by 3 pm. At 4
pm I checked to make sure that his grades were posted. They were, but all of his World
History students had A's. When I went into the grade book the students only had one grade
entered titled "blah blah blah". All students received a hundred percent of the points for this
grade, giving all his World History students a 100% in the class at this point. I have attached
screenshots.

Please advise as how you would like me to move forward.
--

Respectfully,


Aubrey Allen

Social Studies Divisional

H.D. Jacobs High School

2601 Bunker Hill Drive, Algonquin, IL 60102

T: 847-532-6100 E: Aubrey.Allen@d300.org

Social Studies Vision: Develop empathetic, informed, active citizens through relevant
experiences.

---

Please save trees. Print only when necessary.

---

E-MAIL CONFIDENTIALITY NOTICE: Illinois has a very broad public records law. Most written communications (including email) to or
from school district officials and staff are public records available to the public and media upon request. Your email communications
may therefore be subject to public disclosure.

PT 312

--
**Go Eagles!**

Mark Rasar
Associate Principal of Operations
H. D. Jacobs High School
2601 Bunker Hill Drive
Algonquin, IL 60102
Main: 847-532-6100
FAX:  847-532-6115
<u>mark.rasar@d300.org</u>

*Children are the reason the world exists.*



Please save trees. Print only when necessary.

E-MAIL CONFIDENTIALITY NOTICE: Illinois has a very broad public records law. Most written communications (including email) to or from school district officials and staff are public records available to the public and media upon request. Your email communications may therefore be subject to public disclosure.

| | |
|---|---|
| **From:** | Allen, Aubrey |
| **To:** | Barbara.Valle; Mark Rasar; Deborah Stout |
| **Subject:** | Re: This Morning |
| **Date:** | Friday, February 15, 2019 7:51:36 AM |

Bob stopped by to apologize. He did not know all the details.

On Fri, Feb 15, 2019 at 7:07 AM  Allen, Aubrey <aubrey.allen@d300.org> wrote:
Pierre and Bob Frasier showed up at my office. Pierre told me he needed my help. He asked
me if I saw his email last night. I said yes, but I cannot say anything that is what the meeting
is for on Tuesday. Bob Frasier and Pierre looked at me.  Frasier said something. Pierre said,
"I am having a fact finding because of something you told me to do." I said again, I cannot
say anything. That is what the meeting is for on Tuesday. Pierre looked at me and said you
kn ew about this?  Frasier said fine, we will make sure he has someone with him.
I believe we had an exchange of them wanting my help and my saying I can not saying
anything that is what the meeting is for on Tuesday at least three times, before the comment
that I told him to do this and now he is in trouble.

--

Respectfully,


Aubrey Allen

Social Studies Divisional

H.D. Jacobs High School

2601 Bunker Hill Drive, Algonquin, IL 60102

T: 847-532-6100 E: Aubrey.Allen@d300.org

Social Studies Vision: Develop empathetic, informed, active citizens through relevant
experiences.



--

Respectfully,


Aubrey Allen

Social Studies Divisional